UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

STEVEN OLDS,

        Petitioner,

    - against -

NEW YORK STATE,

        Respondent.

------------------------------------------------------------ x

**MEMORANDUM AND ORDER**

06-CV-6308-ENV

**VITALIANO, D.J.**

*Pro se* petitioner Steven Olds seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his sentencing to consecutive prison terms for the crimes of first degree reckless endangerment, N.Y. Penal Law § 120.25, and second degree criminal possession of a weapon, id. § 265.03[1]. Petitioner argues that the imposition of consecutive sentences was unlawful because: (1) his criminal possession of a weapon was a material element of the acts for which he was also convicted of reckless endangerment; (2) it violated the rule announced in Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000); and (3) the sentencing court improperly considered criminal conduct for which he had been acquitted, in violation of the Due Process Clause. For the reasons that follow, the writ is denied and the petition is dismissed.

## Background

### I. Petitioner's Trial

In September 2002, petitioner was tried before a jury in Queens County Supreme Court for the murder of Michael Pruna and attempted murder and reckless endangerment of Johnny Abreu. At trial, the prosecution adduced evidence to support the following case against Olds:

c/M

In the early morning of August 6, 2000, Johnny Abreu was playing pool at Ticks Tavern in Queens with his brother, Louis Abreu, and Robert Pruna. Angel Robles, who had been feuding with Michael Pruna, entered the bar along with Olds and Enrique Insuasti. Upon noticing Robles's arrival, Pruna called his brother, Michael, to tell him to stay away from the bar because his "little enemy was there." (Transcript of Record, People v. Olds, Indict. No. 3130/00 (Queens County Ct. 2002) ("Trial Tr.") at 1047.) Notwithstanding his brother's attempted warning, Michael Pruna left for the bar, fearing that his brother had "got[ten] into some trouble." (Id. at 727.) A few minutes later, Robert Pruna did get into a fight with Insuasti and Olds. Michael Pruna arrived but was shut out of the bar by a bouncer. When the group got outside, Louis Abreu retrieved a baseball bat from the back of a truck and began arguing with Olds, prompting Olds to run around a corner. Michael Pruna then pulled up, double parked, and got out of the car. Olds returned, yelled at Michael Pruna to "step back" (id. at 1051), pulled out a gun, and fired several shots. Michael fell to the ground.

Johnny Abreu retreated into his brother's truck. Olds approached the truck, pointed his gun at Abreu, and ordered him to get out. Abreu exited the truck and began running away, but he stumbled and fell several times. Olds gave chase, and fired shots at Abreu each time he fell down. When Olds caught up, he pointed two guns at Abreu and ordered him to put his head down. Abreu then lunged at Olds, knocking him over and dislodging one of the guns. Both men then ran away. Abreu went to the hospital, where Michael Pruna had been transported and where he died 11 days later.

The defense case at trial was largely based on testimony by Insuasti. According to him, Michael Pruna arrived at the bar and asked him to come outside. While the two were talking, Robert Pruna and Robles began fighting inside. When Robles saw Michael Pruna outside the door, he yelled that he has "got a gun." (Id. at 1335.) Olds then closed and locked the door, and

2

Pruna drove away. A few minutes later, Olds unlocked the door and got into an argument outside with Louis Abreu, who pulled out a bat. Michael Pruna returned and jumped out of his car, pointing a gun at Olds. Insuasti then heard five or six gun shots, but he could not determine whether Olds had a gun or who had fired first. When Pruna fell down, Insuasti saw Olds run over, take Pruna's gun, and run away around a corner.

After the close of evidence, the court submitted to the jury two counts of murder in the second degree (intentional and depraved indifference murder), one count of attempted murder in the second degree, criminal possession of a weapon in the second and third degrees, and reckless endangerment in the first degree. The court instructed that the reckless endangerment charge accused Olds of "under circumstances evincing a depraved indifference to human life, recklessly engag[ing] in conduct which created a grave risk of death to Johnny Abreu, in that the defendant did aim and discharge a loaded weapon at and in the direction of Johnny Abreu." (Id. at 1547-48.) The instruction for second degree criminal weapon possession explained that Olds was accused of "knowingly possess[ing] a loaded firearm; to wit, a pistol or revolver with the intent to use unlawfully against another." (Id. at 1553.) The court did not tie this charge to Abreu, as opposed to Pruna, but explained that conviction required the jury to find that: (1) Olds possessed a loaded firearm, (2) he did so knowingly, (3) the firearm was operable, and (4) he had the intent to use it unlawfully against another. (Id. at 1554.)

Olds was acquitted of the intentional murder and attempted murder charges, but convicted of second degree weapon possession and first degree reckless endangerment. The jury was unable to reach a verdict on the remaining charges.

3

## II. Petitioner's Sentencing

Petitioner was sentenced on December 3, 2002. At the hearing, defense counsel read aloud a letter written by petitioner expressing his "deepest apologies to the victim's family" because "I have done something that can never be forgotten but, if given a second opportunity, this horrific incident would have never taken place." (Transcript of Dec. 3, 2002 Hearing, People v. Olds, Indict. No. 3130/00 (Queens County Ct. 2002) ("Hearing Tr.") at 13.)

The court sentenced petitioner to consecutive terms of imprisonment of 15 years on the weapon possession count and 2.5 to 5 years on the reckless endangerment count. (Id. at 19-20.) The court justified the consecutive terms in light of its "opinion . . . that the shooting toward the other person [Abreu], after the incident with Mr. Pruner had already been completed, comprises a separate and distinct incident." (Id. at 19.) The court further expressed its belief that the jury did not fully understand its "duty to retreat" and justification instructions, insofar as the evidence showed that Olds went around a corner, and returned with a gun, "and that is what most likely precipitated Mr. Pruner to draw a weapon." (Id. at 17-18.) The court castigated Olds, observing that "what you've done has permanently destroyed another family. You've permanently deprived that family of a son, a father, a husband, an uncle and a brother for all time. It's irrevocable. He will never come back and they will never ever see him again." (Id. at 18.)

## III Post-Trial History

In April 2005, petitioner appealed his sentence, arguing that (1) the sentencing court illegally imposed consecutive sentences because the weapon possession was a material element of the reckless endangerment count, (2) his consecutive sentences violated Apprendi because the court made factual findings neither found by the jury nor stipulated to by the defense, and (3) the sentencing court improperly considered the murder charges on which he had been acquitted.

4

On December 12, 2005, the Appellate Division, Second Department, affirmed the sentence, finding that although "[s]entences imposed on convictions of two or more offenses may not run consecutively where a single act constitutes two offenses, or where a single act constitutes one of the offenses and a material element of the other," here "the jury could have reasonably inferred that the defendant possessed the gun in question with the intent to use it unlawfully against another prior to and separate from the ultimate act which resulted in the reckless endangerment charge." People v. Olds, 24 A.D.3d 571, 572, 806 N.Y.S.2d 687, 688 (2nd Dep't 2005). The court also noted that the "sentencing proceeding was not 'so permeated with improper considerations and prejudicial references as to deprive the defendant of due process of law." Id. (quoting People v. Bejarano, 287 A.D.2d 727, 727-28, 732 N.Y.S.2d 253 (2nd Dep't 2001)). Finally, the court held that Olds's "remaining contentions are either unpreserved for appellate review or without merit." Id.

Olds's application for leave to appeal the affirmance by the Appellate Division was denied by the Court of Appeals on March 14, 2006. People v. Olds, 6 N.Y.3d 836, 814 N.Y.S.2d 85, 847 N.E.2d 382 (2006).

## Discussion

The instant petition was filed on November 20, 2006, seeking habeas relief on the same grounds that he sought relief on direct appeal.[1]

### I. The AEDPA Standard

Under the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner only if a claim that was "adjudicated on the merits" in state court resulted in a decision that was (1) contrary to or involved an unreasonable application of clearly established federal law, as

---

[1] Respondent concedes that petitioner's claims are both timely and have been properly exhausted.

determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d); see Gutierrez v McGinnis, 389 F.3d 300, 304 (2d Cir. 2004) (describing this standard as "AEDPA deference"). A state court decision is "contrary to" established federal precedent if it "contradicts the governing law set forth in [Supreme Court] cases" or arrives at a different conclusion from the Supreme Court on "materially indistinguishable" facts. Williams v. Taylor, 529 U.S. 362, 405, 120 S. Ct. 1495, 1519-20 (2000). A state court decision involves an "unreasonable application" of federal law if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of" that case. Id. at 413. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, the state court's application must involve "[s]ome increment of incorrectness beyond error". Francis S. v. Stone. 221 F.3d 100, 111 (2d Cir. 2000).

## II. Petitioner's Claims Are Not Cognizable On Habeas Review

Petitioner does not attack the validity of his convictions on either count. Rather, all three of his habeas claims pertain only to the state court's imposition of sentence.

The petition is fatally flawed, however, because "there is 'no constitutionally cognizable right to concurrent, rather than consecutive, sentences.'" United States v. McLean, 287 F.3d 127, 136 (2d Cir. 2002) (quoting United States v. White, 240 F.3d 127, 135 (2d Cir. 2001)). As a result, "the question of 'whether sentences should be made to run concurrently or consecutively is purely a question of state law and is not cognizable on a habeas petition.'" Reed v. Cuomo, 08-CV-4875, 2010 U.S. Dist. LEXIS 45488, at *9 n.4 (E.D.N.Y. May 7, 2010) (quoting Reyes v. People, 08-CV-8645, 2009 U.S. Dist. LEXIS 34030, at *4 (S.D.N.Y. Apr. 21, 2009)); see Washington v. Goord, 07-CV-7150, 2009 U.S. Dist. LEXIS 106066, at *19 (S.D.N.Y. Nov. 13,

2009); Watkins v. Ercole, 06-CV-15222, 2008 U.S. Dist. LEXIS 67797, at *67 (S.D.N.Y. Sept. 9, 2008). Moreover, as a general proposition, "no constitutional issue is presented where a sentence falls within the range proscribed by state statutory law." Freeman v. Burge, 05-CV-1585, 2009 U.S. Dist. LEXIS 45854, at *50 (E.D.N.Y. May 22, 2009) (quoting Chisholm v. Henderson, 736 F. Supp. 444, 449 (E.D.N.Y. 1990)). Here, petitioner does not dispute that the sentences imposed for both convictions were within the range prescribed by New York law. This Court is therefore without power to grant petitioner his requested relief, whatever state law improprieties were allegedly perpetuated by the sentencing court.[2]

Nor does petitioner's assertion that his sentence violated the Supreme Court's holding in Apprendi v. New Jersey lead to habeas relief.[3] In Apprendi, 530 U.S. 466, 120 S. Ct. 2348 (2000), and Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004), the Supreme Court held that, under the Sixth Amendment, it is within the jury's – and not a judge's – province to determine any fact (aside from a prior conviction) relied upon to increase the maximum punishment otherwise authorized for a particular offense. In this case, the sentencing court simply found that the weapon possession and reckless endangerment of Abreu were "separate and distinct" incidents meriting consecutive sentences. In any event, Apprendi does not apply

---

[2] In his reply papers, petitioner seeks to expand on his claim by alleging that his sentence runs afoul of the Eighth Amendment's prohibition against cruel and unusual punishment. (Pet'r. Aff. at 4.) Since this argument was never presented to the state courts, any Eighth Amendment claim is unexhausted and cannot be considered on federal habeas review. See Baldwin v. Reese, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349 (2004). In any event, the claim would fail on the merits. Petitioner's sentences within the respective statutory maximums could not possibly be deemed so disproportionate to the charges on which he had been convicted, see Harmelin v. Michigan, 501 U.S. 957, 997, 111 S. Ct. 2680, 2702-03 (1991), that it could constitute a Constitutional violation. Freeman, 2009 U.S. Dist. LEXIS 45854, at *57-*58.

[3] Respondent initially argues that Olds's Apprendi claim is barred from habeas review by independent and adequate state procedural grounds because "it is apparent that the [Second Department] determined that the claim was unpreserved." (Resp. Br. at 15, n. 17.) However, the Second Circuit has "made clear that when a state court rejects a petitioner's claim as either unpreserved or without merit, the conclusive presumption is that the adjudication rested on the merits." Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006); see Jimenez v. Walker, 458 F.3d 130, 145-46 (2d Cir. 2006).

here because the sentencing court did not make factual findings that resulted in a sentence "*beyond* the prescribed statutory maximum" for each count of conviction. Apprendi, 530 U.S. at 490, 120 S. Ct. at 2362-63 (emphasis added); see White, 240 F.3d at 135; Abaari v. United States, 03-CV-4723, 2008 U.S. Dist. LEXIS 2690, at *4 (E.D.N.Y. Jan. 14, 2008).

Furthermore, after the parties completed briefing on the instant petition, the Supreme Court clarified that Apprendi does not preclude a sentencing judge from finding facts relevant to the determination of whether to impose consecutive rather than concurrent sentences. Oregon v. Ice, 129 S.Ct. 711, 717-19 (2009); see Garcia v. United States, 09-CV-9278, 2009 U.S. Dist. LEXIS 118836, at *10 n.3 (S.D.N.Y. Dec. 21, 2009); Taylor v. Poole, 07-CV-6318, 2009 U.S. Dist. LEXIS 76316, at *70-*71 (S.D.N.Y. Aug. 27, 2009). In short, the sentencing court's imposition of consecutive sentences, even if it were in violation of state law,[4] simply does not pose an issue of federal constitutional law on which this Court could grant habeas relief.

## III. "Acquitted" Conduct

The Court also finds no constitutional error in the Second Department's finding that the sentencing proceeding, which reflected a consciousness (if not reliance) on the fact that Olds was responsible for the homicide of Michael Pruna despite his acquittal on the intentional murder charge, was not "so permeated with improper considerations and prejudicial references as to deprive the defendant of due process of law." Olds, 24 A.D.3d at 572, 806 N.Y.S.2d at 688. The sentencing court's references to the death of Michael Pruna were not at all removed from

---

[4] This is not to suggest that the Court believes that the sentence imposed on Olds was illegal under New York law. It does not. Although petitioner's conviction for reckless endangerment of Abreu arose out of his brandishing and firing of a loaded firearm, that conduct is legally distinct from his initial, continuing possession of that firearm. See Whitfield v. Ricks, 01-CV-11398, 2006 U.S. Dist. LEXIS 96935, at *46-*47 n.10 (S.D.N.Y. Oct. 6, 2006) ("Once the unlawful possession of the weapon is established, the possessory crime is complete and any unlawful use of the weapon is punishable as a separate crime") (quoting People v. Almodovar, 62 N.Y.2d 126, 130, 476 N.Y.S.2d 95, 97, 464 N.E.2d 463, 465 (1984)). Such distinct and separate conduct can justify consecutive sentencing in New York. People v. Brown, 80 N.Y.2d 361, 364, 590 N.Y.S.2d 422, 424, 604 N.E.2d 1353, 1355 (1992).

petitioner's own acknowledgments in his letter that was read aloud to the court prior to sentencing. Nor was consideration of his responsibility for Pruna's death out of harmony with the jury's deadlock on a different homicide count. In any event, reliance of a court on conduct that was one of the essential elements of an acquitted count does not violate any constitutional provision where there is proof of the specific act relied upon by a preponderance, or an acknowledgement of responsibility, as here, by the defendant. Cf. United States v. Watts, 519 U.S. 148, 156, 117 S. Ct. 633, 638 (1997); United States v. Cummings, 329 Fed. Appx. 317, 319 (2d Cir. 2009). At bottom, Olds cannot overcome AEDPA deference. There was no constitutional error, substantial or small, in the sentencing court's consideration of the fact that, regardless of his mental state, Olds shot and killed Michael Pruna.

## Conclusion

For all of the foregoing reasons, Olds's petition for a writ of habeas corpus is dismissed with prejudice and the writ is denied. Since Olds has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. 28 U.S.C. § 2253(c)(2). Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a) that any appeal from this Memorandum and Order would not be taken in good faith and therefore *in forma pauperis* is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S.Ct. 917, 920-21 (1962).

The Clerk of the Court is directed to enter judgment and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
May 28, 2010

ERIC N. VITALIANO
United States District Judge